DORSETT et al., Appellants,

v.

WHEELER, et al., Appellees.

[Cite as *Dorsett v. Wheeler* (1995), 101 Ohio App.3d 716.]

Court of Appeals of Ohio,
Third District, Paulding County.

No. 11–94–3.

Decided March 16, 1995.

*Glenn H. Troth,* for appellants.

*Patrick H. Young,* for appellee Wheeler.

*Michael C. Jones,* for appellee Child Support Enforcement Agency.

THOMAS F. BRYANT, Presiding Judge.

This is an appeal by plaintiff-appellants Kelly Dorsett et al., from a judgment by the Court of Common Pleas of Paulding County, Juvenile Division.

Dorsett and defendant-appellee David Wheeler were married on July 7, 1984 and their marriage was dissolved on November 10, 1988. In 1993, Dorsett apparently received financial assistance for her and her children from the Ohio Department of Human Resources ("ODHR").

On May 20, 1993, an attorney for the Child Support Enforcement Agency, Paulding County ("CSEA") filed a complaint for paternity naming Dorsett and two of her children, twins Joshua and Johnathon Scott, as plaintiffs and Wheeler as defendant.

On February 10, 1994, at hearing, Wheeler admitted he was the natural father of Joshua and Johnathon, born April 7, 1984. On March 1, 1994, the trial court entered its judgment finding Wheeler the natural father of Joshua and Johnathon, ordering visitation rights for Wheeler, ordering Wheeler to pay child support, ordering Dorsett to seek employment and ordering Wheeler to reimburse ODHR $1,397.49, which the court determined was the amount Dorsett received in governmental financial assistance.

It is from this judgment that Dorsett, Johnathon and Joshua now appeal and submit three assignments of error which are:

"I. The trial court erred in awarding the Department of Human Services retroactive child support reimbursement; and then refusing to award retroactive child support reimbursement to appellant is an abuse of discretion, against the manifest weight of the evidence, and is error as a matter of law.

"II. The decision of the trial court in ordering appellant Kelly Dorsett to seek employment is an abuse of discretion and is error as a matter of law.

"III. The trial court erred as a matter of law in ordering the name change for appellants Johnathon Scott and Joshua Scott."

In *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223, 18 OBR 281, 283, 284, 480 N.E.2d 802, 805, the Ohio Supreme Court stated:

"Implementation of the plain-error doctrine is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. The plain-error doctrine permits correction of judicial proceedings when error is clearly apparent on the face of the record and is prejudicial to the appellant. Although the plain-error doctrine is a principle applied almost exclusively in criminal cases, this court has stated that the doctrine may also be applied in civil causes, even if the party seeking invocation of the doctrine failed to object * * * if the error complained of 'would have a material adverse affect on the character and public confidence in judicial proceedings.' * * *'" (Citations omitted.)

We have determined that the plain-error doctrine must be invoked in the case at bar in order to prevent a manifest miscarriage of justice. Therefore, for the reasons set forth below, we reverse the trial court's judgment, except for that portion finding Wheeler to be the natural father of Joshua and Johnathon, and remand this cause for further proceedings.

We believe the principal error committed here was Dorsett's lack of legal representation, or, in the alternative, her knowing voluntary waiver of such representation. The record shows that the attorney for CSEA filed the complaint against Wheeler and named Dorsett and the twins as plaintiffs. Hence, the CSEA attorney filed the complaint as if he were Dorsett's attorney but the record is clear that he did not, in fact, represent Dorsett and her interests during this litigation. Notwithstanding the dissent's assertion that Dorsett was adequately represented by the attorney for CSEA, the record clearly shows, and the trial court *expressly* found in its judgment entry, that Dorsett appeared at hearing without counsel. We believe the trial court, if not CSEA's attorney, had an affirmative duty to make direct inquiries into the status of Dorsett's legal representation. Without such inquiries being made, the procedure employed by the trial court, and by the attorneys of record, deprived Dorsett, a layperson, of a fair opportunity to protect her interests. The result of this error is that not only were Dorsett's interests not adequately protected, but there is an adverse material effect on the character and confidence in this judicial proceeding.

For example, although the complaint expressly states that the plaintiffs sought a retroactive child support order from the date of the twins' birth, no mention was made of this issue at hearing. Hence, if the trial court's judgment were

affirmed, Dorsett might forever be precluded from raising this issue by application of the doctrine of *res judicata*.

We also believe the trial court erred by awarding the CSEA $1,397.49 as reimbursement for governmental financial assistance given to Dorsett and/or her twins. While it is beyond dispute that the ODHS has the authority to seek recoupment for its monetary expenditures for the support of its recipients, see R.C. 5107.07(A) and Ohio Adm.Code 5101:1-29-77, we believe that the proper procedure must be employed to recover such expenditures. R.C. 3111.04(A), as amended effective July 15, 1992, authorizes a county child support enforcement agency to initiate an action to determine paternity if the child resides in that county and the child's mother is a recipient of public assistance as defined in that statute. Here, although Dorsett apparently received the type of public assistance envisioned by R.C. 3111.04(A) and an attorney for CSEA apparently initiated this action, CSEA was not made a party at the time of the filing of the complaint or at any time thereafter by utilization of the appropriate Ohio Rules of Civil Procedure. Only Dorsett and the twins were named as plaintiffs, not CSEA.

Further, in any event, there is *no* evidence in the record to support the trial court's judgment awarding the CSEA $1,397.49. Nothing in the record indicates how the trial court arrived at this figure. In fact, the record shows that the CSEA attorney expressly stated that CSEA did not wish to pursue recovery for the financial assistance given to Dorsett. Clearly, the procedure employed here, awarding a nonparty governmental agency $1,397.49 without any basis in the record showing how this figure was calculated, and awarding it *after* the attorney representing the agency stated the agency would not seek recoupment, is inadequate to support any award as well as to serve the purpose of the statute affording to the agency its right to proceed in the matter. Obviously, any award given by the trial court to the CSEA for recoupment of its financial assistance needs to be supported by evidence submitted at hearing on the issue. No such evidence is in the record here. Hence, without any competent, credible evidence to support the trial court's judgment, we must reverse that judgment awarding CSEA $1,397.49.

We further believe that Dorsett's lack of legal representation contributed to the trial court's errors of ordering Dorsett to seek employment and ordering the twins' surname changed from Scott to Wheeler.

This court has previously held that a trial court may order an obligee to seek employment. See *Justinger v. Schlegel* (Feb. 19, 1993), Paulding App. No. 11-92-7, unreported, 1993 WL 44606, and R.C. 3109.05(A)(1). However, here, Dorsett, without legal representation in an action brought in her name by an attorney who did not represent her, may not be presumed to have foreseen that

the trial court would *sua sponte* issue an order for her to seek work or address any other matter not raised in the pleadings. No evidence was adduced at hearing on the issue and the trial court did not inquire whether it was in the best interests of Dorsett's five children for Dorsett to remain home. Although unsubstantiated by the record, the appellants' brief asserts that one of Dorsett's children is "handicapped," which, if true, may require Dorsett to remain at home to care for this child.[1] This court has recently affirmed a trial court's judgment that allowed a mother to resign her fulltime employment, without penalty, in order to better care for her children. See *In re Bischoff* (Aug. 10, 1994), Union App. Nos. 14–94–4 & 5, unreported, 1994 WL 424021. See, also, *Smith v. Smith* (1991), 75 Ohio App.3d 679, 600 N.E.2d 396. In any event, the trial court erred to Dorsett's prejudice when it unilaterally ordered her to seek employment without first determining the best interests of the children in this matter.

█ The trial court also erred by changing the twins' surname from Scott to Wheeler without determining whether it was in the best interests of the children. In *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, paragraphs one and two of the syllabus, the Supreme Court of Ohio stated:

"Pursuant to R.C. 3111.13(C), a court of common pleas may determine the surname by which the child shall be known after establishment of the existence of the parent and child relationship, and a showing that the name determination is in the best interest of the child.

"In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Courts should consider only those factors present in the particular circumstances of each case."

Here, the trial court's sole rationale for changing the twins' surname was that it always did so upon the request of the father after paternity has been established. Although the dissent apparently sees no error in this procedure, the Supreme Court of Ohio was very clear that a trial court must determine the best interests of the children when considering a change in the children's surname. The record shows that the twins are ten years of age, have apparently always

---

1. The record is unclear whether Dorsett is the sole caretaker of the children.

used the surname of Scott, and Dorsett stated at hearing that the children wished to keep the name Scott. These are some of the factors the Supreme Court of Ohio specifically stated that a trial court is to consider when determining whether it is in the best interests of a child to change that child's existing surname. Here, the record reveals there was no such inquiry concerning the twins' best interests in this matter. Therefore, based on the authority of *Bobo, supra*, the trial court's procedure was clearly error.

In passing, we note that *Bobo* cannot be distinguished from the case at bar merely because Dorsett and Wheeler were once married, as the twins were born prior to their marriage.

█ Finally, we do not disturb that portion of the trial court's judgment finding Wheeler to be the natural father of the twins. Not only did Wheeler admit at hearing that he is the twins' natural father but the record also shows that the blood tests of the parties concluded the probability of paternity at approximately ninety-nine percent.

Because the fair administration of justice requires that Dorsett be given an opportunity to secure counsel, whether through CSEA or by retaining private counsel, or be given an opportunity to knowingly and voluntarily waive such representation, we reverse the trial court's judgment to the extent discussed above.[2]

Appellants' three assignments of error are well taken.

Having found error prejudicial to appellants, we reverse the trial court's judgment in part, affirm the judgment in part, and remand this cause for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

SHAW, J., concurs.

HADLEY, J., dissents.

HADLEY, Judge, dissenting.

I respectfully dissent from the majority opinion. The majority finds plain error in this civil matter due mainly to appellant Dorsett's lack of legal representation resulting in her interests not being adequately protected regarding retroactive child support, an award of reimbursement to the CSEA, an order for her to

---

2. In the interest of clarity, our opinion and judgment herein do not mean that a trial court should appoint counsel at state expense for a person in Dorsett's position.

seek work and an order for her twins' surname to be changed from Scott to Wheeler.

Normally, to assert error on appeal, the claimed error must be brought to the attention of the trial court by pleading, motion, objection or otherwise. Appellants have done none of those in this case. Further, appellants do not raise in their assignments of error that they were not adequately represented by counsel. The first assignment addresses the money that they did not get. The second assignment is about the court ordering appellant Dorsett to seek work and the third concerns the name change of the children. Despite the lack of any mention concerning counsel at the trial level and the failure to raise that as an assignment of error, the majority feels compelled to find plain error in the fact that the CSEA attorney filed a complaint on appellants' behalf, a deed that is authorized by statute.

In considering the proceedings surrounding this case, we must also consider that the federal government has for years been spending billions of dollars on the Title IV program of the Social Security Act, Section 301, Title 42, U.S.Code, as amended. There are periodic audits to see that there is full compliance with all the requirements for the determination of parentage and the collection of child support and there are serious monetary penalties for all jurisdictions that do not comply. For a few years the state of Ohio lost millions of dollars as a result of its noncompliance before getting its program established.

R.C. 3111.08 provides that a paternity action is a civil action and is to be governed by the Rules of Civil Procedure. The complaint states that the action is filed by the CSEA attorney on behalf of appellants. There is no one else in the cause for that attorney to represent as the CSEA is not named as a party. However, the CSEA is entitled to child support payments by virtue of an assignment made by appellants who have received assistance from the Department of Human Services. Nowhere in the record do appellants request additional counsel to represent them until after the action is concluded in the trial court. Certainly appellants were aware that they could have separate counsel if they desired and with two pretrial hearings in the cause, opportunity existed to make such a request. At the last pretrial hearing on February 10, 1994, an agreement was reached regarding the case as set forth in the journal entry signed by the attorney for Wheeler and the CSEA attorney on behalf of appellants. The transcript of that hearing reflects that counsel was appearing on behalf of Dorsett. The court recites that it has been informed that there is to be an acknowledgment of the paternity and agreement as to the other items. The acknowledgment of paternity is received and the court then addresses the fact that the last name of the children on the birth certificate is the same as appellant Dorsett's previous husband, Scott, but does not reflect the name of the true

father of the children, Wheeler. Appellant Dorsett then interjects that, apparently since the agreement was reached, she had spoken with the children, now still only age nine years, who told her they did not want their names changed. The court then recited its position that it was in the best interest of the children for family, support, visitation and inheritance reasons to have their true father's name. Appellant Dorsett did not object, but rather responded, "Whatever."

CSEA counsel then recited the information regarding child support and pointed out that all of the reimbursement for child support is owed to the Ohio Department of Human Services. Appellant made no comment regarding that statement.

It was pointed out to the court that there was no agreement regarding visitation. The court then considered how long it had been since the father had visited with the children and considered that there should thus be an introductory time for the children to become acquainted with their father and stepmother without overnight stays for the first six months, after which the court's standard rules would take effect. Appellant Dorsett acknowledged that as the father he was entitled to visitation but suggested that he spend quality time with the children rather than leaving them with others. The court cautioned Wheeler as to his obligations and then pointed out to both parents that they were to do what was in *the best interest of the children.* Appellant Dorsett then stated that was all that she was asking. The court then went on to further point out to both parents their obligations *in the best interest of the children* in light of the animosity it sensed between the parents. The parties were made to exchange phone numbers in open court so that they would be better able to communicate *in the best interest of the children.* The court then pointed out that if there were any problems further hearing would be had regarding the visitation.

The court then inquired as to how many children appellant Dorsett was currently receiving assistance for, and upon learning that there were five children altogether, invoked its "standard order" for appellant to seek employment. Appellant subsequently made several further comments regarding visitation but voiced no objection to the order to seek work.

A review of the numerous statutory provisions involving child support, paternity determination, child support agencies, and related topics, set forth in R.C. 2301.34 *et seq.,* R.C. 3111.01 *et seq.,* and R.C. 3113.21 *et seq.,* indicates that there are elaborate and detailed provisions for the protection of everyone's rights from the passing out of required prepared pamphlets setting forth the rights of the various parties, to mandamus actions against those who do not carry out their duties to collect support, including the courts.

R.C. 5101.324 requires the Department of Human Services to adopt rules for the governing of child support enforcement agencies in establishing paternity

compliance units including the manner in which the agencies will service Title IV–D cases in accordance with federally mandated requirements. That section also provides for the preparation of pamphlets to inform the parties of the rights, obligations and procedures in establishing parent and child relationships and even for a toll-free telephone number for parties to call for more information regarding the procedures.

In 1993, Dorsett apparently received financial assistance for her and her children from the Department of Human Resources. The receipt of such assistance requires that the recipient assign certain rights of the assistance group to the department, including the right to financial and medical support. R.C. 5101.59 and 5107.07. Support payments are then to be collected by the county agency and, if subject to assignment, are paid to the Department of Human Services. Support obligations owed to children are to be distributed in accordance with laws and rules applicable to the federal child support program.

On May 20, 1993, a complaint for paternity was filed by appellants pursuant to the provisions of R.C. 3111.22(C)(6), after the child enforcement agency dismissed a request for an administrative determination of the existence or nonexistence of a parent and child relationship and the mother and alleged father were advised of their right to bring an action under R.C. 3111.01 to 3111.19 for such determination. R.C. 3111.04 and 3111.22(D) provide that no one can bring a paternity action without first requesting an administrative determination through the child support enforcement agency. The CSEA then schedules a hearing before an administrative officer to see if the parents will voluntarily sign an acknowledgement of paternity or agree to be bound by genetic testing. After the hearing is scheduled, notice is given to the parties setting forth their rights and responsibilities and pointing out that they have the right to legal counsel to assist them in the proceedings.

After that first hurdle is overcome, the next issue is child support, and an administrative hearing is scheduled for that determination and the issuance of an order. All along the way if either party objects to an order he or she is advised that each has the right to file an action in court for the court's determination.

It is provided in the child support provisions that an obligee may contact the child support agency for assistance in obtaining an order for support. R.C. 3111.20 and 2301.38. In addition, some sections provide that the obligee or the CSEA "acting on behalf of the obligee" may bring an action for unpaid support. R.C. 3113.2110. That is precisely what transpired here.

To sum this all up, it is not as if any party walked into a courtroom without any knowledge as to what was going to transpire or who was representing whom. Further, following the statutory procedure, there was no need for the CSEA attorney or the court to make inquiry as to the status of appellant's legal

representation. An elaborate system has been devised with built-in rights protection all along the way. The record reflects that the CSEA attorney filed the action on behalf of appellants. The fact that the other matters were resolved apparently to the satisfaction of appellants together with the apparent open opportunity, as reflected by the transcript, for appellant to insert her input into the pretrial hearing on February 10, 1994, indicates that there was no lack of representation or otherwise harmful error committed by the trial court on any of the points raised by appellants' brief or assignments of error, and the judgment should be affirmed.